## CENTRAL OF GEORGIA RAILWAY CO. v. SHIVER et al.

A railway company leased a parcel of land to one for twenty years, upon a consideration that the lessee would erect thereon a building to be used as a. warehouse only, and that all goods received by the lessee should be routed over its line of road. The building was to be the property of the lessee, removable by him at the expiration of the lease. The lessee purchased from a materialman articles needed in the erection of the building, and failed to pay for the same. The materialman filed a claim of lien against the lessee and the railway company, claiming a lien upon the building and the land. *Held*, that a petition filed against the lessee and the railway company, for the purpose of foreclosing the lien and subjecting the land and building to the payment of the debt for materials furnished,

set forth no cause of action against the railway company, and should have been dismissed as to it, on demurrer.

Argued March 2,—Decided March 28, 1906.

Foreclosure of lien. Before Judge Littlejohn. City court of Americus. January 5, 1905.

Shiver brought suit against Ansley and the Central of Georgia Railway Company, and alleged: Petitioner, as a materialman, furnished material for the erection of a warehouse, amounting to $1,-216.59, to Ansley, who, as a tenant of the railway company, was erecting the warehouse on land owned by it; and furnished further material, in the same transaction, amounting to $53.47. Petitioner filed his claims of lien against the railway company as required by the statute, and brought suit to foreclose the same within twelve months from the date of recording his liens. The railway company had leased the land upon which the warehouse was erected to Ansley for twenty years, in consideration of Ansley's erecting the warehouse, using the land for no other purpose, and routing his freight by the railway company's line of road. No·rent was to be paid for the property. At the expiration of the.lease, Ansley was to have the privilege of removing all improvements erected thereon by him. He obligated himself not to sublet the premises. Upon his failure to carry out any stipulation of the lease the railway company might enter upon the property after thirty days' notice. The railway company demurred to the petition, on the ground that it set forth no cause of action. The demurrer was overruled, and the railway company excepted.

*William D. Kiddoo,* for plaintiff in error.

*W. P. Wallis* and *W. A. Dodson,* contra.

COBB, P. J. (After stating the foregoing facts.) The Civil Code, §2801, par. 2, as amended by the act of 1899, provides: "When work done or material furnished for the improvement of real estate is done or may be furnished upon the employment of a contractor, or some other person than the owner, then and in that case the lien given by this section shall attach upon the real estate improved, as against such true owner, for the amount of the work done, or material furnished, unless such true owner shows that such lien has been waived in writing, or produces the sworn statement of the contractor, or other person, at whose instance the work was done or material was furnished, that the agreed price or reasonable value

thereof has been paid; provided, that in no event shall the aggregate amount of liens set up hereby exceed the contract price of the improvements made." Van Epps' Code Sup. §6176. In construing the words "or some other person," this court, in the case of *Pittsburgh Plate Glass Co.* v. *Peters Land Co., 123 Ga. 725,* said: "Thus interpreting the statute, it would mean that a materialman who furnished material for the improvement of real estate to one who occupied the legal relation of contractor, or one who had some contractual relation with the true owner in connection with the improvements to be made, would have a lien, and that no one else would. The word *contractor* is not to be construed in its technical sense, which would embrace any person who had any contract of any character, but is to be given its limited, colloquial sense, meaning a person engaged in the business of making contracts for the improvement of real estate, and the other persons referred to in the statute embrace that class who may furnish material for the improvement of real estate but may not be engaged in a business commonly known as the business of a contractor." In the present case a materialman claims a lien for material furnished for the improvement of real estate at the direction of a tenant. A tenant does not come within the meaning of the phrase "contractor, or some other person," as above construed. It is true that the instrument under which Ansley became a tenant specifically provides for the erection of the warehouse, into the erection of which the materials of the plaintiff went. But this instrument can not put Ansley in the relation of a contractor to the railway company. The warehouse is to be erected by him, and becomes his individual property, removable at the expiration of his lease. The railway company neither expressly nor by implication assumes any liability for the erection of the warehouse, and there is nothing which can be construed as a contract between it and Ansley under which Ansley is erecting the warehouse at the railway company's expense, save that the erection of it by Ansley is a consideration for the railway company's leasing to him the premises.

It seems to be the purpose of the statute to charge the owner of real estate with a lien for material furnished only when there was a specific contract for the improvements made, either made by the owner or assented to by him. And here there is no contract of any character. The statute provides that "in no event shall the aggre-

gate amount of liens claimed exceed the contract price of the improvements made." There could be no limit upon the true owner's liability for material furnished, unless the material were furnished under some contract to which he was a party expressly or by implication. In *Stevens* v. *Georgia Land Co., 122 Ga.* 317, it was held that in order for the materialman to make out a prima facie case against the true owner, it is incumbent upon him to show that the amount for which he asserts a lien comes within the contract price agreed upon between the contractor and the owner of the property. In *Rowell* v. *Harris, 121 Ga.* 240, it was said: "The money as it becomes due is charged with a lien as against the contractor in favor of the subcontractor, materialmen, and laborers. On the other hand the land is charged with a lien as against the owner, for the purpose of securing the payment of the contract price, and creating the fund out of which the subcontractors and laborers may be paid. . . But if nothing becomes due to the contractor, there is nothing caught. There is no fund out of which those employed by him are to be paid. . . The materialmen and laborers stand in his [contractor's] shoes, and recover out of what is due him. That failing, they have no claim against the landowner."

There need be no contract between the materialman and the true owner, but there must be a contract for material with a person who has contracted with the true owner for the erection of the improvements. A contract is necessary to fix the liability of the owner and establish a privity between him and the materialman. A stranger may not order work done upon real estate and thus charge the true owner. Neither may a tenant, unless there is some relation existing between him and his landlord other than that of lessor and lessee. In the case of *Reppard* v. *Morrison, 120 Ga.* 28, it was held that a landlord will not become liable for improvements made at the direction of the tenant, unless he expressly or impliedly consents to the contract under which the improvements are made. The railway company consented that a building might be erected on its land, but it never gave its consent to any contract for its erection or the furnishing of materials to be placed therein. It is by no means clear in the present case that the instrument under which Ansley entered was a lease. It may be that it was no more than a mere license. It is not necessary, under the view we have taken of

the case, to determine the exact character of this instrument; and we have treated it as a lease, for the purposes of this case.

The petition set forth no cause of action against the railway company, and the demurrer should have been sustained.

*Judgment reversed.   All the Justices concur.*