PITTMAN, District Judge:
 

 This appeal arises from a Chapter 11 bankruptcy proceeding in which WWG Industries, Incorporated (WWG), is the debt- or-in-possession. Both the bankruptcy court and the district court held that WWG’s interest as debtor-in-possession in certain property was inferior to a mechanic’s lien held by United Textiles, Incorporat
 
 *811
 
 ed (United). WWG contends that both courts were in error. This court affirms the district court for the reasons set out herein.
 

 I. Factual Background and Prior Proceedings
 

 The facts in this case are not disputed. Prior to filing a petition for bankruptcy, WWG employed United to perform certain processing services on yarn owned by WWG. United performed these services and shipped the yarn to WWG or another of WWG’s subcontractors. On March 1, 1982, WWG filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101
 
 et seq.
 
 (1982). At that time WWG owed United a total of $130,-831.64 for yarn processed during January and February, 1982. On March 11, 12, and 23, 1982, United filed notices of lien and amended notices of lien pursuant to Ga. Code Ann. § 67-2003; it claimed a labor lien on the yarn it had processed. WWG received notices of the lien claims on the same dates.
 

 In July, 1982, WWG filed this suit against United in bankruptcy court, seeking to compel United to return yarn in its possession to WWG. United filed an answer and counterclaim asserting that the yarn had been returned and, furthermore, that it was subject to a mechanic’s lien for the services United performed on it. The parties then entered into a stipulation, agreeing to the relevant facts and the controlling legal issues. They stipulated that United indeed had returned all the yarn to WWG or its subcontractors. They stipulated that the lien amount in controversy in this suit was $71,163.16 and that the yarn subject to this lien claim was on hand at WWG’s plant or the facilities of its subcontractors as work in progress at the time the bankruptcy petition was filed. They further stipulated that the remainder of United’s claim against WWG (totaling $59,-668.48) was an unsecured claim. It is not an issue in this suit. On the basis of these stipulated facts, the parties submitted the case to the bankruptcy court, stating the controlling legal issue as follows:
 

 Does United haye a valid and enforceable mechanic’s lien superior to the rights of debtor [WWG] in and to the work in process on which United performed its labor or are debtor’s rights and title to that work in process superior to United’s lien claim?
 

 The bankruptcy court took the case under submission without trial on the basis of the stipulation, the pleadings, and the parties’ briefs. It noted that under the Bankruptcy Code, WWG possessed as debtor-in-possession the state law rights of a bona fide purchaser who bought the yarn on the date the bankruptcy petition was filed. The court proceeded to hold that the relation back provisions of Georgia’s mechanic’s lien statutes operated through 11 U.S.C. § 546 to defeat WWG’s claims. Under Georgia law, the bankruptcy court held, United’s perfection of its lien related back to the time United commenced work on the yarn. The court thus held that United’s lien was superior to WWG’s rights as an intervening hypothetical bona fide purchaser.
 

 WWG appealed the decision to the district court, and it affirmed. The court stated that WWG obviously had notice of United’s as yet unfiled lien when the bankruptcy proceedings commenced. Therefore, the court concluded, WWG as debtor-in-possession enjoyed the status of only a bona fide purchaser with notice of the lien. The court then held
 
 In re Marietta Baptist Tabernacle, Inc.,
 
 576 F.2d 1237 (5th Cir. 1978), to be binding authority that the rights of a hypothetical bona fide purchaser with notice are inferior under Georgia law to a mechanic’s lien such as United’s. The court thus held that United’s lien was superior to WWG’s interests as debtor-in-possession. WWG appealed.
 

 II. Discussion
 

 Upon filing a petition under Chapter 11 of the Bankruptcy Code, a debtor obtains the title of “debtor-in-possession.” 11 U.S.C. § 1101(1) (1982); H. Lavien,
 
 West’s Federal Forms: Bankruptcy Procedure and Forms
 
 208 (1985). As “debtor-in-possession,” the debtor enjoys nearly all the
 
 *812
 
 rights and powers that a trustee would have if the bankruptcy court were to appoint one, 11 U.S.C. § 1107 (1982),
 
 [1]
 
 including the right to continue operation of its business,
 
 see
 
 11 U.S.C. § 1108 (1982). H. Lavien,
 
 supra,
 
 at 208. The bankruptcy court appoints a separate trustee only upon the request of a party in interest and after a hearing. 11 U.S.C. § 1104 (1982). When it filed for bankruptcy, WWG was the debt- or-in-possession, and, since no trustee has been appointed, it remains the debtor-in-possession. WWG was in possession of the property on which United claims a lien and had notice of United’s lien prior to filing its bankruptcy petition.
 

 The Bankruptcy Code provides that a trustee (or a debtor-in-possession if there is no trustee) may avoid a statutory lien, such as United’s mechanic’s lien, if under state law the lien would be unenforceable against a bona fide purchaser.
 

 The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
 

 (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists;
 

 11 U.S.C. § 545 (1982). Section 546 limits the trustee’s avoiding power as follows:
 

 (b) The rights and powers of the Trustee under § 544, 545, and 549 of this Title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. ...
 

 11 U.S.C. § 546 (1982). Since the Code gives a debtor-in-possession in such a situation the same rights as a trustee, 11 U.S.C. § 1107(a) (1982), WWG as debtor-in-possession can avoid United’s lien if under Georgia law the rights of a bona fide purchaser of the yarn would be superior to United’s lien.
 

 Under Georgia law, the rights of a purchaser against the holder of a mechanic’s lien depend upon whether the purchaser at the time of the purchase has notice of the preexisting, unperfected lien. If the purchaser has no such notice, he cuts off the rights of the lien claimant even if the lien claimant subsequently perfects the lien within the statutory time period.
 
 Glover Linoleum & Carpet, Inc. v. Tutterow,
 
 160 Ga.App. 410, 287 S.E.2d 348 (1981). A purchaser
 
 mth
 
 notice of the lien, however, cannot defeat the rights of a lien claimant who subsequently perfects the lien in timely fashion.
 
 Oglethorpe Savings & Trust Co. v. Morgan,
 
 149 Ga. 787, 102 S.E. 528 (1920). WWG’s power to avoid United’s lien, therefore, hinges on whether WWG is given the status of a purchaser with notice or one without notice.
 

 WWG contends that it should be treated as a purchaser without notice. Section 545 of the Bankruptcy Code, it argues, gives a debtor-in-possession the rights of a hypothetical and therefore perfect “bona fide purchaser” without actual or constructive notice of preexisting liens. WWG argues that a true “bona fide purchaser” by definition has no notice of other parties’ claims or rights to the property he is purchasing.
 
 See Black’s Law Dictionary
 
 161 (5th ed. 1979). Therefore, WWG concludes, it must be treated as a purchaser without notice of United’s lien and as such it defeats United’s lien under Georgia law. The relation back provisions of the Georgia lien statutes, WWG notes, do not operate against a true bona fide purchaser without notice.
 

 The issue before this court was addressed by the Fifth Circuit in
 
 In re Mar
 
 
 *813
 

 ietta Baptist Tabernacle,
 
 576 F.2d 1237 (5th Cir.1978), which arose under the old Bankruptcy Act. In that case, a mechanic’s lien claimant performed services on the debtor’s property prior to the debtor’s filing a Chapter 11 bankruptcy petition. Like United, the lien claimant perfected the lien by filing a notice of claim after the bankruptcy proceedings began but within the time allowed by state law. The Fifth Circuit had to determine whether the lien was valid against the receiver in bankruptcy under the Bankruptcy Act. The pertinent provision of the Bankruptcy Act at that time provided:
 

 (c)(1) The following liens shall be invalid against the trustee:
 

 (B) every statutory lien which is not perfected or enforceable at the date of the bankruptcy against one acquiring the rights of a bona fide purchaser from the debtor on that date, whether or not such purchaser exists:
 
 Provided, That where a statutory lien is not invalid at the date of bankruptcy against the trustee under subdivision (c) of section 110 of this title and is required by applicable lien law to be perfected in order to be valid against a subsequent bona fide purchaser, such a lien may nevertheless be valid under this subdivision if perfected within the time permitted by and in accordance with the requirements of such
 
 law....
 

 The Bankruptcy Act, § 67(c)(1)(B), 11 U.S.C. § 107(c)(1)(B) (1976) (emphasis added),
 
 repealed by
 
 Pub.L. No. 95-598, § 401, 92 Stat. 2683 (1978). The Fifth Circuit, construing the provision in italics above, stated:
 

 the lien is valid against the receiver if: (1) the lien is valid against a creditor who obtained a judgment against the bankrupt on the date of the bankruptcy [i.e., it is not invalid under 11 U.S.C. § 110(c) (1976) (repealed in 1978)]; (2) the lien must be perfected to be valid against a subsequent bona fide purchaser; and (3) the lien is actually perfected in the manner provided by state law.
 

 576 F.2d at 1239-40. The court then held that it was “readily apparent” that the second and third of these requirements were met:
 

 Georgia law is settled that a lien will not be valid against a bona fide purchaser until notice of the claim of lien has been filed.... Additionally, the appellee properly filed its notice of claim of lien within the time prescribed by the applicable Georgia statute.
 

 Id.
 
 at 1240 (citations omitted). The court went on to find that the lien would be valid against a judgment creditor and thus met the requirements of 11 U.S.C. § 107(c)(1)(B) (1976) (repealed in 1978), to be valid against the receiver.
 

 The comparable section of the new Bankruptcy Code, however, does not contain the provision applied by the Fifth Circuit in
 
 Marietta Baptist. Compare
 
 11 U.S.C. § 107(c)(1)(B) (1976) (repealed in 1978)
 
 with
 
 11 U.S.C. § 545 (1982).
 

 Nonetheless, this court arrives at the same result as
 
 Marietta Baptist
 
 and holds that United’s lien is valid against the debtor-in-possession, WWG. Prior to its filing for bankruptcy, WWG created United’s right to a lien by contracting for and receiving United’s services. 4
 
 Collier on Bankruptcy
 
 § 545.04 (15th Ed. 1985) on page 545-18 says the following:
 

 Section 545(2) is the most important of the four paragraphs of section 545 establishing the standards for invalidation. It deals with all statutory liens, including tax liens. Its predecessor, Section 67c(l)(B) was referred to as the “heart” of the Bankruptcy Act’s statutory provisions (footnotes omitted).
 

 Furthermore, on pages 545-20, 21 it is stated:
 

 A saving provision is included in section 546(b), which permits perfection after the filing of the petition in some instances.
 

 Section 546(b) provides in part:
 

 “The rights and powers of a trustee under section ... 545 ... of this title are subject to any generally applicable law
 
 *814
 
 that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection.” Thus, “[i]f a transferee is able to perfect under section 546(b) and that perfection relates back to an earlier date, then in spite of the filing of the bankruptcy petition, the trustee would not be able to defeat the lien, because the lien would be perfected and enforceable against a bona fide purchaser that purchased the property on the date of the filing of the petition.” Consequently, if the holder of a statutory lien that the trustee could avoid under 545(2) still has, as of the date of the filing of the petition, under applicable non-bankruptcy law, the opportunity to perfect his lien against an intervening interest holder, then the holder of the statutory lien may perfect his interest, within the time allowed by the applicable law, against the trustee notwithstanding the intervention of the bankruptcy case. The rights granted' to the holder of a statutory lien by section 546(b) only prevail against the trustee if the holder perfects pursuant to applicable law and that perfection relates back to a time prior to the filing of the petition (footnotes omitted).
 
 [2]
 

 Further,
 
 Collier
 
 at § 546.03 on page 546-9 in discussing 11 U.S.C. § 546(b) says the following:
 

 Former Section 67c(l)(B) of the Bankruptcy Act permitted the postpetition perfection of a statutory lien against the trustee, if under applicable nonbankrupt-cy law perfection could relate back to defeat the rights of an intervening creditor. Present section 546(b) continues this policy and expands it to include holders of nonstatutory liens such as the holder of a purchase money security interest under U.C.C. section 9-301(2).
 

 “[I]f an interest holder against whom the trustee would have rights still has, under applicable nonbank-ruptcy law, and as of the date of the petition, the opportunity to perfect his lien against an intervening interest holder, then he may perfect his interest against the trustee.”
 

 In short, the Code protects those who are protected by applicable state law (footnotes omitted).
 

 Collier’s conclusion is supported by Congressional history, which reads as follows:
 

 This section permits the trustee to avoid the fixing of certain statutory liens. It is derived from sections 67b and 67c of present law. Liens, that first become effective on the bankruptcy or insolvency of the debtor are voidable by the trustee. Liens that are not perfected or enforceable on the date of the petition against a bona fide purchaser are voidable. If a transferee
 
 [3]
 
 is able to perfect under section 546(a) and that perfection relates back to an earlier date, then in spite of the filing of the bankruptcy petition, the trustee would not be able to defeat the lien, because the lien would be perfected and enforceable against a bona fide purchaser that purchased the property on the date of the filing of the petition.
 

 H.Rep. No. 95-595, p. 371, U.S.Code Cong. & Admin.News 1978, 5787, p. 6327.
 

 The House Report further states that any interest holder under applicable non-bankruptcy law may as of the date of the petition have the opportunity to perfect his interest against the trustee: “The rights granted to a creditor under this subsection prevail over the trustee only if the transferee has perfected the transfer in accordance with applicable law, and that perfec
 
 *815
 
 tion relates back to a date that is before the commencement of the case.”
 
 Id.
 

 The appellant relies upon
 
 Glover, supra,
 
 contending that under Georgia law a statutory lien does not relate back when there is a bona fide purchaser without notice whose deed is recorded prior to the filing of the statutory lien. In
 
 Glover
 
 the Georgia Court of Appeals quoted the following language from
 
 Milner v. Wellhouse,
 
 148 Ga. 275(1), 96 S.E. 566 (1918):
 

 “In a contest between a materialman’s lien which was recorded within the time prescribed by law, and a security deed executed by the common debtor [or, as here, a warranty deed executed by the owner] after the material was furnished, but before the record of the material-man’s lien, where it affirmatively appears that the ...
 
 deed was upon a valuable consideration,
 
 and there is nothing to show actual knowledge to the grantee, or knowledge of any fact sufficient to put him upon inquiry as to the existence of the materialman’s lien, the presumption arises that the grantee in the ... deed is a purchaser without notice.”
 

 Glover,
 
 287 S.E.2d at 348 (emphasis added).
 

 Appellant is incorrect in equating the debtor who files a petition in bankruptcy to a purchaser of real estate who paid the seller a valuable consideration. A debtor has not paid any consideration when he files his petition. His lien is instead equivalent to a judgment creditor of a debtor who has recorded his judgment or filed his execution with the sheriff against the debt- or’s property. As stated in
 
 Marietta Baptist, supra:
 

 The remaining question, therefore, is whether the appellee’s lien would be valid against a creditor who obtained a judgment against the bankrupt on the date of bankruptcy. Because the appellee did not file its notice of claim of lien until after the debtor filed its Chapter XI petition, the appellee’s lien will prevail only if it relates back to some time before the date the Chapter XI petition was filed. The appellee’s lien was created by operation of Ga.Code Ann. § 67-2001(1). Georgia courts consistently have held that such liens relate back to the time the work under the contract commenced, provided that the lien is properly perfected.
 

 576 F.2d at 1240 (footnote omitted).
 

 This statement of Georgia law holds true under the Bankruptcy Reform Act of 1978 as amended.
 

 AFFIRMED.
 

 [1]
 

 . The Bankruptcy Code provides:
 

 § 1107. Rights, powers, and duties of debtor in possession
 

 (a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.
 

 11 U.S.C. § 1107(a) (1982).
 

 [2]
 

 .
 
 See In re Saberman,
 
 3 B.R. 316, 1 Collier Bankr.Cas.2d 671 (B.Ct, N.D.Ill.1980).
 

 [3]
 

 . 1985 Bankruptcy Code, Section 101 (11 U.S.C. § 101)
 

 .§ 101. Definitions. In this title—
 

 (48) "transfer" means every'mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or
 
 with an interest in property,
 
 including retention of title as a security interest, [sic] and foreclosure of the debtor's equity of redemption; (emphasis added).
 
 See also
 
 § 101(31).